Tukney, J.,
delivered the opinion of the Court.
There is érror in this record. The defendant in error instituted his action of trespass against the plaintiff in error .and one Charles Cook, in the Circuit Court of Greene County, for ten thousand dollars.
The declaration substantially avers, that the defendants, with others, entered the premises of the defendant in error, with the purpose of- assaulting him and carrying him from his premises and home, and by unlawful combination, and with menace and threats,, drove, and caused him to leave and remain from his home, and to conceal himself, to save himself from being maimed and murdered; also, that the defendant did at divers times in the years 1861 and 1862, counsel and *188 advise “rebels” to take the lives and property of their enemies, the Union men, etc., to break 'them up, take and destroy, or drive out of the country, all men opposed to the “so-called Confederate States of America,” etc.) that said defendants, at divers times, wrote letters .to the Confederate authorities at Knoxville, counseling, requesting and urging said authorities to arrest and confine the plaintiff, etc., thereby causing the arrest and false imprisonment of the plaintiff; to which there is a plea of “not guilty.” Verdict of acquittal, as to Cook; verdict arid judgment against plaintiff in error, for $3,000, from which he appeals to this Court.
The facts upon which the action is based, are: In September, 1861, there were two companies in existence, the one a Union, aud the other a “rebel” company; these companies drilled every Saturday in September. In the neighborhood of the rebel company there was what is called in the evidence, “ The Bushwhacking fight.” - This fight produced considerable excitement in the neighborhod, and especially with the Union company, of which defendant in error was Captain, or at least a leading spirit. .Some time after the fight, the defendant in error voluntarily went to the picket line of a regular rebel company, commanded by Captain Rum-bough, was taken by a soldier on picket, and carried to the Captain, at his headquarters, about one hundred and fifty yards from the house of the plaintiff in error, Girdner.
' While there, plaintiff in error went into the room where he was with Rumbough, and in the language of the witness, who is the defendant in error, “abused me *189 with, all the epithets possible, said Pd be hung with a grape vine, Pd shed Southern blood.”
“ He asked me why I went around Cedar Creek to get information — why I didn’t come here; he accused me of being in the “ Bushwhacking fight.” This is the only time the proof shows any demonstration of unkind feeling upon the part of plaintiff in error to defendant in error.
Defendant in error proves that he left his home on' account of one Joseph Holt; that Holt and plaintiff in error belonged to the rebel company called the “ Southern Greys.”
Under this statement of facts, the witness is permitted, against the objection of the plaintiff in error, to state “that the object of the ‘Southern Greys’ was to arrest Union men and bring them in and make them take the Southern oath.” This testimony should have been rejected for two reasons: 1st, It is not pertinent to the averments of the declaration; 2nd, It is a conclusion of the witness.
The defendant in error further proves that Rum-bough kept him until 12 o’clock the next day, and sent him to Greeneville. He was kept there one night, and the next day released by Gen. Zollicoffer.
Six or eight days after his return home, he was arrested by the Marshal and taken to Knoxville, kept there five or six days and released. Over the objection of plaintiff in error, witness proved that, after his return home, Joseph Holt came to him and said, “I understand you have been harboring Dave Fry.” (Fry was re *190 ported-to have burned the bridges.) “I called him a liar and made at him, and he got away.” “He left, swearing he’d have me arrested. He belonged to the Southern Greys.” ' -
This evidence was admitted upon the assumption of' a conspiracy upon the part of the members of the company, “The Southern Greys,” to arrest, assault, maltreat or drive from his home, the plaintiff below. This was error. The proof does not justify the assumption. The defendant in error was arrested in the first instance, not by the “ Southern Greys,” but by Capt. Rumbough’s command of cavalry, and in the second instance, by the Marshal.
The plaintiff in error is shown to have done nothing, except in the use of the language ascribed to him at Rumbough’s quarters. After this, he is not known to any part of the record to the disturbance of the defendant in error. He was examined, and states positively that he was not a member of the “ Southern Greys,” and it is in proof that he protected Union men.
A conspiracy is a combination of men for an evil purpose; an agreement between two or more persons to commit some crime in concert; an agreement for the purpose of wrongfully prejudicing another or to pervert public justice. It may be established by positive or circumstantial evidence, and must most generally be made to appear by circumstances, rather than by- direct proof, on account of the motive and purpose of the associations.
But in this case, we have neither positive nor circumstantial proof of conspiracy on the part of the plaintiff in error, nor in fact of the company, “The Southern *191 Greys,” to do any of the acts necessary to the offense. There is nothing to connect him with, or to bring to him a knowledge of, the declaration of Holt.
His Honor should have rejected this testimony when offered, or if he admitted it under the belief that evidence showing a conspiracy would be afterwards introduced, on discovering the failure to introduce such testimony he should have withdrawn it.
Defendant in error was permitted to prove, plaintiff in error objecting, that while at Knoxville, he saw some letters counselling his arrest. Gen. Caswell, of the Confederate army, had them and refused to deliver them to him. The letters were written, one by Reuben Davis and one by plaintiff in error, and addressed to Caswell.
This was error, because it gives the conclusion of the witness as to the contents of the • letters and not the contents; because the state of facts at the time did not Avarrant the proof of Davis’ letter; because the absence of the letters, is not accounted for and because it is not the best evidence.
In the discussion of the competency of the contents of letters, 1 Starkie on Ev., 149, mar., 164, says, “The contents of every written paper are, according to the ordinary and well established rules of evidence, to be proved by the paper itself and by that alone, if the paper be in existence. * * One of the reasons for the rule requiring the production of the written instrument is, in order that the Court may be possessed of the whole.”
If the course proposed in this case be pursued, “the *192 Court may never be in possession of the whole, though it may happen that the whole, if produced, may have an effect very different from that which might be produced by a statement of part.”
The rule, as here stated, is subject to the modification, that if the letter or other instrument be lost, parol proof of its contents is admissible. It devolves. upon the party offering the evidence, to account for the loss of the instrument. It is shown in this case, that Gen. Caswell is dead; this fact requires less strictness of proof by the defendant in error of the loss or destruction of the letter of the plaintiff in ei'ror to Gen. Cas-well, still it was incumbent upon him to have inquired of the personal representative or widow of Caswell, or of the person likely to have custody of his papers, if to be found, and to have search made amongst said papers for the letter.
Judgment reversed and cause remanded.